# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOSEPH JAMES SCHMIDT,<br><br>    Plaintiff,<br><br>    v.<br><br>RAJIV SHAH, Administrator, United States Agency for International Development,<br><br>    Defendant. | Civil Action No. 08–1831 (CKK) |

## MEMORANDUM OPINION[1]
(March 17, 2010)

This action arises out of Plaintiff Joseph James Schmidt's employment with the United States Agency for International Development ("USAID"), which ended in March 2008 when Schmidt resigned from the agency. Prior to his resignation, Schmidt filed an employment discrimination complaint with the agency that was ultimately resolved through a settlement agreement. Schmidt brings this action *pro se* against Defendant Rajiv Shah in his official capacity as USAID Administrator claiming, *inter alia*, that the settlement agreement is invalid, that USAID employees improperly forced his resignation from the agency, and that Schmidt has suffered from various acts of discrimination. Schmidt also has filed an action under the Freedom of Information Act (FOIA) seeking certain information from USAID related to this case, which is also pending before this Court. *See Schmidt v. Fore*, Civil Action No. 08-2185 (D.D.C. filed Dec. 16, 2008).

---

[1] Pursuant to Rule 25(d), Rajiv Shah has been substituted for Henrietta Fore as the defendant in this action.

Presently pending before the Court is Defendant's [12] Motion to Dismiss or, in the Alternative, for Summary Judgment. Schmidt filed a brief in opposition, to which Defendant filed a reply, and Schmidt filed a surreply without leave of Court. After briefing on this motion became ripe, Schmidt filed a [17] Motion Requesting Removal of Specific Workers' Compensation Items from Plaintiff's Civil Complaint, to which no opposition was filed. Schmidt subsequently filed three submissions with additional material addressing the merits of Defendant's dispositive motion, along with a [22] Motion for Acceptance of Plaintiff's Supplemental Filings. Defendant filed a brief in opposition to this latter motion, and Schmidt filed a reply.

For the reasons explained below, the Court shall DENY Schmidt's motion to accept supplemental materials, GRANT Schmidt's motion to remove specific workers' compensation items from his Complaint, and GRANT Defendant's motion to dismiss or, in the alternative, for summary judgment. Specifically, the Court finds that it lacks jurisdiction over Schmidt's claims relating to workers' compensation and any claims based on the settlement agreement. The Court also finds that the release of claims in the settlement agreement bars Schmidt from litigating the remainder of his claims, with the exception of an alleged FOIA violation and a claim for retaliation based on testimony given as a witness in an employment discrimination investigation. The Court shall dismiss the FOIA claim without prejudice in light of the related action pending before this Court and dismiss the surviving retaliation claim for failure to state a claim upon which relief can be granted.

# I. BACKGROUND

*A.    Factual Background*

The following facts are drawn from the allegations in the operative complaint,[2] as well as any exhibits attached to or incorporated by the operative complaint.[3]

### 1.    Schmidt's Employment with USAID

Plaintiff Joseph James Schmidt was an employee of the United States Agency for International Development ("USAID" or "the agency") from December 26, 1994 to March 19, 2008.  Compl. at 1.  In June 2006, Schmidt began experiencing problems at the agency relating to discrimination, harassment, and hostile work environment.[4]  *Id.*  On or about November 7, 2006, Schmidt filed a formal complaint with the USAID's Equal Employment Opportunity ("EEO") Office.[5]  *Id.*  During this time, Schmidt began experiencing physical problems, including chest pains, constant headaches, and trouble breathing.  *Id.* at 2.  One of Schmidt's doctors determined

---

[2] As explained below, Schmidt has filed a [1] Complaint, [4] First Amended Complaint, and [5] Second Amended Complaint.  Because each of the amended complaints incorporates the language of the original complaint, the Court considers all three of these filings to comprise the operative complaint, and the Court shall cite to the allegations in each of these pleadings.

[3] Because the Court does not reach Defendant's alternative motion for summary judgment, the Court is limited to considering the facts alleged in the complaint, any documents attached to or incorporated in the complaint, matters of which the court may take judicial notice, and matters of public record.  *See EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

[4] In his Second Amended Complaint, Schmidt explains more specifically the basis for his discrimination claims against the agency.  Schmidt claims that he was discriminated against on the basis of race, color, and sex, subjected to harassment and a hostile work environment, and retaliated against for engaging in protected activity.  *See* Sec. Am. Compl. at 3-6.

[5] It appears from the record that the actual name of USAID's EEO office is the Office of Equal Opportunity Programs ("EOP").  The Court shall refer to this office as either the "EEO Office" or "EOP."

that Schmidt was suffering from stress in the workplace.  *Id.*  Schmidt began taking a series of antidepressants, mood stabilizers, and other medications that were prescribed by his doctors.  *Id.* One of these doctors was Dr. Allan Melmed, who treated Schmidt from March 2007 through July 2008.  *Id.*

In April 2007, USAID suspended Schmidt's security clearance without notice and claimed that Schmidt's prescription drug use presented a risk to Agency employees.  *Id.*  After a six-week stint on paid administrative leave, Schmidt was allowed to return to work "following a thorough investigation."  *Id.*  However, the stress of the suspension took its toll on Schmidt.  In June 2007, Schmidt's thoughts of suicide seemed to intensify.  *Id.*  After consultation with his wife and Dr. Melmed, Schmidt hospitalized himself at Virginia Hospital Center's Psychiatric Ward for two weeks in early July 2007.  *Id.*  Schmidt was diagnosed with severe depression, severe anxiety, and obsessive-compulsive disorder, and Schmidt remained on very heavy dosages of prescription drugs, which made it very difficult for him to function at home and at work.  *Id.* By February 2008, Schmidt's condition had deteriorated to the point where he could barely function, and USAID placed him on extended, indefinite sick leave.  *Id.*

2.     Settlement Negotiations

In early March 2008, USAID indicated that it would engage in Alternative Dispute Resolution (ADR) in order to resolve Schmidt's EEO complaint.  Compl. at 2.  Schmidt corresponded with Andrew Herscowitz, a USAID attorney, regarding a possible settlement.  *Id.* at 2-3.  Herscowitz asked Schmidt if he would agree to be terminated at USAID and possibly obtain disability benefits.  *Id.* at 3.  Schmidt, however, was not interested in applying for disability and informed Herscowitz that he wanted to return to work when his health had

improved. *Id.* Herscowitz told Schmidt that if he returned to work, there was a possibility that

he would be terminated and have his security clearance revoked. *Id.* During the first half of

March 2008, Herscowitz acknowledged that he had discussed Schmidt's health situation with

Schmidt's supervisor, Ms. Charity Benson. *Id.* Schmidt claims that Herscowitz made his life

"unbearable and miserable" and that Herscowitz's "constant phone threats became

commonplace" and caused his emotional and mental condition to deteriorate. *Id.*

     In mid-march 2008, Ms. Benson called Schmidt to ask when he might be returning to

work. Compl. at 3. She told Schmidt that he would not be given time during work hours to visit

his doctors. *Id.* at 3-4. Schmidt explained to her that he had been allowed 4-8 hours off per

week from November 2006 through January 2008 to attend therapy and medical appointments

and that his job performance did not suffer as a result. *Id.* However, Ms. Benson told Schmidt

that he would not be allowed to take appointments during business hours. *Id.* at 4. Following

this phone call, and following "more threats" from Herscowitz, Schmidt claims that he "began

falling apart." *Id.*

     Schmidt then received a call from Herscowitz informing him that his identification badge

had been deactivated by the USAID Office of Security after Herscowitz told them about

Schmidt's health problems. Compl. at 4. Herscowitz told Schmidt that he had actually done him

a favor because some agency employees wanted Schmidt's security clearance revoked, and

Herscowitz convinced them merely to deactivate Schmidt's ID badge. *Id.* During this time,

Schmidt was at home on extended sick leave. *Id.* Schmidt has requested that the USAID Office

of Security or Office of Human Resources provide him written notification of this action, but

they declined to respond to Schmidt's request. *Id.*

Schmidt eventually ran out of sick and annual leave, and he contemplated suicide. Compl. at 4.  Herscowitz offered to assist Schmidt with obtaining further paid administrative leave, but he also pressured Schmidt to resign from the agency.  Schmidt claims that he "simply could not take any more of [Herscowitz's] cruel punishment, ridicule and constant threats and experienced a temporary nervous breakdown." *Id.*  Schmidt decided "that working at USAID was not worth my life and that if I attempted to return to work something bad might happened [sic] to me, as they had already deactivated my work ID badge." *Id.*  On March 19, 2008, Schmidt wrote a resignation letter and sent it to his director, informing her that he had been "pressured to quit and faced terrible problems with USAID staff." *Id.*

Following Schmidt's resignation, Herscowitz continued to negotiate a settlement agreement with Schmidt and the agency.  Compl. at 4.  Herscowitz ignored many of Schmidt's requests for relief and told him that he was lucky to get anything. *Id.*  When Schmidt had a disagreement with the agency's position, Herscowitz told him he could "take it or leave it" and that Herscowitz was no longer obligated to do anything for Schmidt because he had resigned from the agency. *Id.*  According to Schmidt, Herscowitz controlled the entire settlement process. *Id.* at 5.  Herscowitz eventually suggested that Schmidt retain an attorney to review the draft settlement agreement, and Schmidt did so, paying an attorney for two and a half hours of her time to review the document. *Id.*  However, Herscowitz dismissed the changes suggested by Schmidt's attorney. *Id.*

In late March 2008, Schmidt agreed to sign the settlement agreement.  Compl. at 5. Herscowitz required that Schmidt obtain a signed note from a doctor stating that he was mentally capable of entering into a binding agreement. *Id.*  Schmidt resented this idea but agreed to pass

along a form from Herscowitz to his doctor. *Id.* Dr. Melmed signed the form but left the bottom part of the form, which required the signature of a witness over 18 years of age, blank. *Id.* Herscowitz told Schmidt that without a witness's signature, the form from Dr. Melmed and the draft settlement agreement signed by Schmidt were "null and void." *Id.* Herscowitz told Schmidt to return to Dr. Melmed and get a witness to countersign the form. *Id.* However, Dr. Melmed left on vacation for 7-10 days and was not immediately available. *Id.* In the interim, Schmidt was unhappy with the settlement and approached Herscowitz and USAID managers about resolving their differences. *Id.* Herscowitz threatened to go to the Equal Employment Opportunity Commission Commission ("EEOC") judge and complain about Schmidt, and he presented the signed settlement agreement and doctor's note to the judge as final. *Id.* The EEOC judge ruled that it was a valid agreement. *Id.*

During settlement negotiations, Schmidt took issue with the language in the agreement restricting Schmidt's ability to work in the State Department in the future. Compl. at 5-6. Herscowitz told Schmidt that this provision was added by a senior attorney in his office who did not want Schmidt to work there anymore. *Id.* Herscowitz also told Schmidt that no one cared whether or not he worked at the State Department and that he could do whatever he wanted. *Id.* Herscowitz told Schmidt that the agency would never ask for its money back but that Schmidt should stay clear of USAID because they did not want him working there anymore. *Id.* at 6. Schmidt claims that "[a]fter receiving assurances from Mr. Herscowitz, I decided to sign the settlement agreement with the understanding that I could work for the State Department if I chose to . . . ." *Id.*

3.     The Settlement Agreement

Schmidt signed the final settlement agreement ("Settlement Agreement") on March 26, 2008.  *See* Def.'s Mot., Ex. 1 (Settlement Agreement) at 4.  Jessalyn Pendarvis, Director of USAID's Office of Equal Opportunity Programs ("EOP"), signed the Settlement Agreement on behalf of the agency.  *Id.*  Under the Agreement, the agency agreed to pay Schmidt $140,000 and to refrain from seeking compensation from Schmidt for any leave deficit that he may have accrued.  *See id.* ¶ 1.  In turn, Schmidt agreed to withdraw his administrative complaint in its entirety and cooperate with the agency to ensure that the complaint was dismissed without prejudice.  *Id.* ¶ 2(a).  In addition, Schmidt agreed to refrain from seeking to establish any future employment relationship with USAID or the U.S. Department of State and agreed to cooperate fully with USAID to effect the terms of the Agreement.  *Id.* ¶ 2(b)-(c).  The parties agreed that the Settlement Agreement shall not in any way be construed as an admission of liability or a statement by either party as to the validity of the parties' legal and factual contentions.  *See id.* ¶ 3.

The Settlement Agreement also contained the following language:

[Schmidt's] signature constitutes his agreement to the terms of this Agreement and more specifically his agreement to withdraw or dismiss any action now pending and to refrain from bringing any action that could be brought now or in the future arising from or related to the [EEO] Complaint or any injuries or claims, known or unknown, that [Schmidt] might allege to have suffered as a result of [Schmidt's] employment or association with USAID.

*Id.* ¶ 4.  The Agreement also contained a release:

[Schmidt] waives and relinquishes, for all time, any claims - monetary or non-monetary -, grievances, complaints, actions, causes of action, or other proceedings against USAID, and any USAID officers or employees, in their official capacity, arising from or related to the [EEO] Complaint, based on any events, facts, acts or

circumstances arising from or related to matters at issue in the [EEO] Complaint, or arising from or related to his employment with USAID.

*Id.* ¶ 5.  The Agreement contained a merger clause stating that the Agreement "supersedes any and all prior oral or written agreements, if any, regarding this matter" and that the Agreement could not be modified except by written amendment signed by both parties.  *Id.* ¶ 7.  The Agreement provided that Schmidt could appeal the disposition of his EEO complaint to the EEOC.  *Id.* ¶ 8.

The Agreement also contained a confidentiality provision under which the parties agreed not to divulge the contents of the Agreement to any person other than its signatories.  *See id.* ¶ 10.  However, the Agreement does authorize the parties to divulge its contents to individuals who are required to implement any of its terms.  *Id.*

### 4.  Post-Settlement Interactions with USAID

After Schmidt signed the Settlement Agreement, he contacted a friend in the State Department who said his office would love to hire Schmidt for a vacant position as a Grants Officer, which was similar to his job with USAID.  Compl. at 6.  However, when Schmidt contacted Ms. Pendarvis, the USAID EOP Director, she told Schmidt she was unwilling to change the provision in the Settlement Agreement precluding him from working in the State Department (or any other provision in the Settlement Agreement), regardless of what Herscowitz had told him.  *Id.*

In April 2008, Schmidt formally complained to USAID's EEO Office about his "forced/pressured resignation" and other EEO concerns and allegations.  Compl. at 6.  Schmidt requested to speak with a USAID EEO counselor, but Pendarvis told Schmidt that he was not

entitled to see one because of the Settlement Agreement. *Id.* Schmidt submitted an administrative complaint alleging, *inter alia*, that the agency had unlawfully retaliated against him and harassed him in violation of numerous federal regulations and statutes. *See* Letter from Schmidt to Henrietta Fore, USAID Administrator (May 12, 2008) (attached to Complaint). On May 19 & 29, 2008, Pendarvis dismissed Schmidt's "new" allegations in the entirety and issued Schmidt a notice of right to file a complaint with the EEOC. Compl. at 6. In a June 25, 2008, letter, Pendarvis stated that Schmidt's complaints were in the purview of the EEOC. *Id.* From July 2008 through September 2008, Schmidt submitted a number of additional EEO allegations to Pendarvis, but she refused to acknowledge them. Compl. at 6.

On May 19, 2008, the agency issued a final decision finding that it was in compliance with the Settlement Agreement. *See Schmidt v. Fore*, EEOC Appeal No. 0120082791, 2008 WL 4388021, at *1 (E.E.O.C. Sept. 15, 2008) (attached to Complaint) (hereinafter, "EEOC Appeal"). Schmidt had received the $140,000 contemplated by the Agreement on April 21, 2008. *See id.*[6] Schmidt appealed this decision to the EEOC, and on September 15, 2008, the EEOC issued a decision. *See id.* at 1. According to the EEOC decision, Schmidt had written numerous letters to the agency beginning on April 24, 2008, alleging that the agency was in breach of the Settlement Agreement and requesting that the agency invalidate its terms. *See id.* at 1. Schmidt had contended that he was coerced into signing the Settlement Agreement and sought EEO counseling regarding a new complaint for constructive discharge and continuing reprisal. *Id.*

---

[6] Although Schmidt does not specifically allege in his Complaint that he received the $140,000 on this date, the Court gleans this fact from the EEOC Appeal, which Schmidt attached to his Complaint. Schmidt admits in his opposition brief that he accepted the $140,000 from the agency. *See* Pl.'s Opp'n at 14.

The agency denied it was in breach of the Settlement Agreement or that Schmidt was coerced or under duress when he signed the Agreement. *Id.* The EEOC affirmed the agency's decision, finding that Schmidt had not presented probative or credible evidence that he was coerced or that otherwise supported his contentions. *Id.* at 2. The EEOC notified Schmidt of his right to file a civil action in an appropriate United States District Court within 90 days of its decision. *See id.* at 3.

Schmidt requested reconsideration of the EEOC's decision on September 22, 2008. *See* Letter from Schmidt to Carlton Hadden, Director, EEOC Office of Federal Operations (Sept. 22, 2008) (attached to Complaint). Schmidt again asserted that the Settlement Agreement was invalid due to fraud, misrepresentation, unethical conduct, and lack of a valid medical note. *Id.* at 3.

### 5. Witness Intimidation

Schmidt was named a witness in a separate EEO investigation regarding a former subordinate of Schmidt's. Compl. at 6. Schmidt sent two packets of materials to the EEO investigator. *Id.* On September 9, 2008, Schmidt received a letter from a USAID attorney asking him to refrain from submitting unsolicited statements and/or documentation to the investigator. *Id.*; *see* Def.'s Mot., Ex. 11 (9/9/2008 Letter from James M. Peters to Schmidt).[7] The letter also informed Schmidt that the agency would not reimburse him for $24 in expenses resulting from Schmidt's decision to send the materials via Federal Express. Compl. at 6; Def.'s Mot., Ex. 11. Schmidt was shocked by this letter and viewed it as a form of witness intimidation. Compl. at 6.

---

[7] According to the letter, it appears that Schmidt's statements to the investigator were not entirely unsolicited but exceeded the scope of the inquiry. *See* Def.'s Mot., Ex. 11.

On September 16, 2008, wrote a letter to the EEOC regarding his witness intimidation claim. *See* Letter from Schmidt to Carlton Hadden, Director, EEOC Office of Federal Operations (Sept. 16, 2008) (attached to Complaint).

6.  Workers' Compensation

Beginning in May 2008, Schmidt contacted USAID regarding his eligibility for workers' compensation benefits under the Federal Employees' Compensation Act (FECA). Compl. at 7. Schmidt contacted numerous USAID officials, including then-Administrator Henrietta H. Fore, EOP Director Pendarvis, and his former supervisor Charity Benson. *Id.* Schmidt has attached some of this correspondence as exhibits to his Complaint. None of them responded to Schmidt's requests regarding his desire to apply for benefits from the Office of Workers' Compensation Programs (OWCP) in the Department of Labor. *Id.* On the advice of the Department of Labor, Schmidt submitted signed OWCP forms to his former supervisor, but she refused to acknowledge receipt or otherwise respond. *Id.* OWCP recommended that Schmidt report this problem to the USAID Office of the Inspector General for investigation. *Id.*

On October 22, 2008, Schmidt sent a letter to the Director of OWCP regarding USAID's alleged noncompliance with FECA regulations. *See* Letter from Schmidt to Shelby Hallmark, OWCP Director (Oct. 22, 2008) (attached to Complaint). Schmidt claimed that "USAID continues to behave in a mode of retaliation against me for exercising my lawful rights as a federal employee in preventing me from accessing the OWCP." *Id.* at 2.

7.  Sick Leave Compensation

Part of the settlement discussions related to 200 hours of advanced sick leave that Schmidt claims were approved by the agency in October 2007. Compl. at 7. Schmidt claims that

the agency's finance office misplaced his approved form and never applied the 200 hours to his account. *Id.* Accordingly, the agency charged Schmidt with over 200 hours of leave without pay (LWOP), costing Schmidt over $10,000. *Id.* As part of the Settlement Agreement, the agency agreed not to ask for this money back. *Id.* Schmidt sought to clarify this matter with the finance office in late March 2008 but did not receive a response until July 2008, at which time the office indicated that it had made a mistake and would compensate Schmidt for the $10,000. *Id.* However, the agency's Office of the General Counsel intervened and claimed that this money had been paid as part of the Settlement Agreement. *Id.* Schmidt also claims that USAID failed to compensate him for over 1000 hours of leave time worth approximately $50,000.

      B.      *Procedural History and Schmidt's Claims Against the Agency*

           1.      <u>Schmidt's Complaints</u>

Schmidt filed the Complaint in this action on October 24, 2008. At the end of an eight-page recitation of facts (summarized above), Schmidt states that he is asserting eighteen claims:

1. Constructive Termination;
2. Impermissible conduct on behalf of USAID employees in general and specifically during settlement discussions in March 2008;
3. Invalid Settlement Agreement due to threats, deception, coercion, duress, and poor health, etc.;
4. Facially retaliatory language in the Settlement Agreement;
5. Violation of "Reasonable Accommodation" law
6. Violation of federal regulations and criminal statutes on the part of USAID employees;
7. Violation of EEOC regulations (29 CFR 1614);
8. Violation of the Federal Employees' Compensation Act - 20 CFR (re: Workers' Comp.);
9. Gross Negligence;
10. Continued acts of reprisal and discrimination;
11. Disability Discrimination under the American [sic] with Disabilities Act (ADA);
12. Character Defamation;

13.    Privacy Act Violations;
14.    Breach of Confidentiality;
15.    Freedom of Information Action (FOIA) violations;
16.    Misrepresentation of Settlement Agreement terms;
17.    Witness Intimidation and Tampering; and
18.    [Interfering][8] with an official EEO Investigation (where I was named RMO and witness).

Compl. at 8.  Schmidt requests relief in the form of $1.8 million in damages.  *Id.*

On November 19, 2008, Schmidt filed a First Amended Complaint incorporating the original complaint and adding allegations to many of his claims.  In the First Amended Complaint, Schmidt explains that he is bringing claims under the Federal Tort Claims Act (FTCA) for wrongful discharge and coercion related to his entry into the Settlement Agreement.  *See* First Am. Compl. at 2.  Schmidt also adds allegations pertaining to his claim that the agency violated its obligations under FECA pertaining to workers' compensation benefits.  *See id.* at 2-3.

The First Amended Complaint clarifies that Schmidt is asserting claims under Title VII of the Civil Rights Act of 1964 for retaliation related to his EEO activity in both his own discrimination case and the unrelated EEO case in which he was a witness.  *See* First Am. Compl. at 5-6.  It also clarifies that Schmidt's claim for violation of EEOC regulations pertains to the agency's failure to provide Schmidt with an EEO counselor or respond to his various requests for relief.  *Id.* at 6.  Schmidt also characterizes his "breach of confidentiality" claim as a breach of contract claim based on the Settlement Agreement's confidentiality provisions.  *Id.* at 8-9.

The First Amended Complaint contains allegations pertaining to three new potential causes of action.  The first is a claim under the Family and Medical Leave Act of 1993 (FMLA).

---

[8] Schmidt originally misspelled this word but corrected the misspelling in his First Amended Complaint.  *See* First Am. Compl. at 16.

*See* First Am. Compl. at 8.  Schmidt claims that USAID failed to advise him that he was entitled to unpaid leave under the FMLA and improperly threatened to terminate him based on his mental and physical illness.  *Id.*  Second, Schmidt alleges that USAID violated the Notification and Federal Employee Antidiscrimination and Retaliation Act of 2002 ("No-FEAR Act") by fostering discriminatory practices and failing to follow EEOC regulations.  *See id.* at 9-10.  Third, Schmidt alleges that the agency violated the Occupational Safety & Health Act (OSHA) by failing to foster a positive working environment.  *See id.* at 13.

With respect to the Privacy Act claim, the First Amended Complaint alleges that USAID failed to properly safeguard Schmidt's confidential medical information and shared this information with Schmidt's colleagues at the agency.  First Am. Compl. at 11.  Schmidt further alleges that agency officials called Schmidt's wife and also spoke to Schmidt's supervisors about his medical condition.  *Id.*

The First Amended Complaint clarifies that Schmidt's FOIA claim is based on a FOIA request filed in May 2008 and a new request subsequently sent in September 2008.  *See* First Am. Compl. at 13-14.  On December 16, 2008, Schmidt filed a Complaint pertaining to these FOIA requests in the related case currently pending before this Court, *Schmidt v. Fore*, Civil Action No. 08-2185.

With respect to Schmidt's claim for "character defamation," the First Amended Complaint explains that this claim is based on USAID employees' alleged disclosure of Schmidt's health status without his consent, as well as disclosure of his sworn testimony as a witness in the unrelated EEO action to individuals without a "need-to-know."  *See* First Am. Compl. at 14.  Schmidt also clarifies that his claim for "gross negligence" is based on the

agency's mishandling of Schmidt's sick leave, retirement savings benefits, and other payroll-related paperwork. *Id.* at 15.

On December 4, 2010, Schmidt filed a Second Amended Complaint.[9]  In this pleading, Schmidt informed the Court that he had requested that his case pending before the Labor Department's OWCP be dismissed.  *See* Sec. Am. Compl. at 1-2.  Schmidt also added more detailed allegations regarding several of his claims and the damages he has suffered.

On May 4, 2009, Schmidt filed a "Motion Requesting Removal of Specific Workers' Compensation Items from Plaintiff's Civil Complaint."  In this motion, Schmidt explains that the Department of Labor does have jurisdiction over certain aspects of his workers' compensation claims, and therefore he seeks to strike part of his claim.  Based on the elimination of these certain costs, Schmidt's prayer for relief would be reduced by $100,000, to $1.7 million.

### 2.   Schmidt's Supplemental Filings

Defendant filed his motion to dismiss or, in the alternative, for summary judgment on April 13, 2009.  Schmidt filed an opposition brief, to which Defendant filed a reply.  Schmidt then filed a surreply brief without leave of Court on May 1, 2009, with seven attached exhibits.

On December 4, 2010, Schmidt filed a motion to appoint counsel for purposes of participating in mediation and for leave to file six boxes of documents containing evidence in support of his claims.  The Court denied Schmidt's motion without prejudice on December 10, 2008.  *See* [7] Order (Dec. 10, 2008).  However, because the Court ordered Defendant to file a response to a similar motion filed by Schmidt in the related FOIA case, Defendant filed a [19]

---

[9] The Court construed Schmidt's filing as a motion for leave to file a Second Amended Complaint and granted it.  *See* [7] Order (Dec. 10, 2008).

Response to Plaintiff's Motion to Appoint Counsel on May 15, 2009. Because Defendant expressed an unwillingness to pursue mediation until after resolution of the pending dispositive motion, the Court again denied Plaintiff's motion without prejudice. *See* Min. Order (May 15, 2009). Nevertheless, on May 20, 2009, the Court received a reply brief from Schmidt in support of his motion, captioned "Plaintiff's Response to Defendant's Opposition to Motion for Court-Appointed Attorney as well as Additional Information in Opposition of Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgement [sic] of Plaintiff's Civil Matter." Schmidt's reply includes hundreds of pages of additional material addressing the merits of Defendant's dispositive motion.

On May 21, 2009, Schmidt filed a document captioned "Correction to Plaintiff's Submission of May 20, 2009 and Additional Responses and Exhibits by the Plaintiff in Support of His Civil Matter and Against Defendant's Motion for Dismissal or Summary Judgment." The following day, Schmidt filed another document, captioned "Correction to Plaintiff's Submission of May 21, 2009 and Additional Responses and Exhibits by the Plaintiff in Support of His Civil Matter and Against Defendant's Motion for Dismissal or Summary Judgment." On May 22, 2009, Schmidt filed a "Motion for Acceptance of Plaintiff's Supplemental Filings of May 20, 21 & 22, 2009, in Support of Existing Statements, Allegations and Claims, Including the Introduction of Relevant Exhibits." Defendant filed a memorandum in opposition to this motion, and Schmidt filed a reply.

## II.  LEGAL STANDARD

Defendant has moved for dismissal of Schmidt's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and/or 12(b)(6) and has also moved in the alternative for summary

17

judgment pursuant to Federal Rule of Civil Procedure 56.

### A.     Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1)

A court must dismiss a case when it lacks subject matter jurisdiction pursuant to Rule 12(b)(1).  The Court may "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Coalition for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (quoting *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992)); *see also Jerome Stevens Pharm., Inc. v. Food & Drug Admin.*, 402 F.3d 1249, 1253 (D.C. Cir. 2005) ("[T]he district court may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction.").  "At the motion to dismiss stage, counseled complaints, as well as *pro se* complaints, are to be construed with sufficient liberality to afford all possible inferences favorable to the pleader on allegations of fact." *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1106 (D.C. Cir. 2005).  In spite of the favorable inferences that a plaintiff receives on a motion to dismiss, it remains the plaintiff's burden to prove subject matter jurisdiction by a preponderance of the evidence. *Am. Farm Bureau v. Envtl. Prot. Agency*, 121 F. Supp. 2d 84, 90 (D.D.C. 2000).

### B.     Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)

The Federal Rules of Civil Procedure require that a complaint contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); accord *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam).  Although "detailed factual

allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide the "grounds" of "entitle[ment] to relief," a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* at 1964-65; *see also Papasan v. Allain*, 478 U.S. 265, 286 (1986). Instead, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556).

In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must construe the complaint in a light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations. *In re United Mine Workers of Am. Employee Benefit Plans Litig.*, 854 F.Supp. 914, 915 (D.D.C. 1994); *see also Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979) ("The complaint must be 'liberally construed in favor of the plaintiff,' who must be granted the benefit of all inferences that can be derived from the facts alleged."). However, as the Supreme Court recently made clear, a plaintiff must provide more than just "a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1950. Where the well-pleaded facts set forth in the complaint do not permit a court, drawing on its judicial experience and common sense, to infer more than the "mere possibility of misconduct," the complaint has not shown that the pleader is entitled to relief. *Id.* at 1950.

In evaluating a motion to dismiss under Rule 12(b)(6), the Court is limited to considering the facts alleged in the complaint, any documents attached to or incorporated in the complaint, matters of which the court may take judicial notice, and matters of public record. *See EEOC v.*

*St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997); *see also Vanover v. Hantman*, 77 F. Supp. 2d 91, 98 (D.D.C. 1999), *aff'd*, 38 F. App'x 4 (D.C. Cir. 2002) ("[W]here a document is referred to in the complaint and is central to plaintiff's claim, such a document attached to the motion papers may be considered without converting the motion to one for summary judgment.") (citing *Greenberg v. The Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999)). Where, as here, the action is brought by a *pro se* plaintiff, the Court must take particular care to construe the plaintiff's filings liberally, for such complaints are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

C.     *Motion for Summary Judgment Pursuant to Federal Rule of Civil Procedure 56*

Pursuant to Federal Rule of Civil Procedure 56, a party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994). Under the summary judgment standard, the moving party bears the "initial responsibility of informing the district court of the basis for [its] motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits which [it] believe[s] demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In response, the non-moving party must "go beyond the pleadings and by [its] own affidavits, or depositions, answers to interrogatories, and admissions on file, 'designate' specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal citations omitted).

Although a court should draw all inferences from the supporting records submitted by the nonmoving party, the mere existence of a factual dispute, by itself, is insufficient to bar summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To be material, the factual assertion must be capable of affecting the substantive outcome of the litigation; to be genuine, the issue must be supported by sufficient admissible evidence that a reasonable trier-of-fact could find for the nonmoving party. *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987); *Liberty Lobby*, 477 U.S. at 251 (the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law"). "If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50 (internal citations omitted). "Mere allegations or denials in the adverse party's pleadings are insufficient to defeat an otherwise proper motion for summary judgment." *Williams v. Callaghan*, 938 F. Supp. 46, 49 (D.D.C. 1996). The adverse party must do more than simply "show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, while the movant bears the initial responsibility of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact, the burden shifts to the non-movant to "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Id.* at 587 (citing Fed. R. Civ. P. 56(e)) (emphasis in original).

### III. DISCUSSION

Liberally construed, it appears that Schmidt's Complaint, as amended, asserts over twenty claims, although many of these claims are overlapping or duplicative. In addition to the eighteen

enumerated claims in his original Complaint, Schmidt appears to be asserting claims for violations of the FMLA, the No-FEAR Act, and the OSHA. At least eight of these claims pertain to the circumstances surrounding the negotiation and implementation of the Settlement Agreement, and at least five of the claims relate to various forms of employment discrimination and retaliation that were subject to the Agreement. In addition, Schmidt asserts claims relating to his requests for workers' compensation, alleged improprieties concerning an unrelated EEO investigation at USAID, and alleged violations of the Privacy Act and the Freedom of Information Act. Defendant moves to dismiss some of these claims on the ground that the Court of Federal Claims has exclusive jurisdiction over actions arising out of settlement agreements. To the extent that the Court does have jurisdiction, Defendant moves to dismiss the Complaint for failure to state a claim upon which relief can be granted. Alternatively, Defendant moves for summary judgment. The Court shall address each of these contentions after first determining whether it is appropriate to consider the supplemental materials that Schmidt has filed in support of his claims.

### A. *Motion to Accept Supplemental Filings*

Defendant opposes Schmidt's motion to have this Court accept and consider his three supplemental filings containing hundreds of pages of additional responses and exhibits in opposition to Defendant's motion to dismiss or, in the alternative, for summary judgment. Defendant also asks that Schmidt's surreply brief, which was filed without leave, be stricken from the record. Because these submissions were filed after Defendant submitted his reply brief, they are surreplies not authorized by the Local Rules. *See* Local Civil Rule 7(b) (permitting parties to file only a single memorandum in opposition to a motion). The decision to grant or

deny leave to file a surreply is committed to the sound discretion of the court. *Baloch v. Norton*, 517 F. Supp. 2d 345, 349 n.2 (D.D.C. 2007). Leave is most typically granted when the movant raises new arguments in his reply brief that require some additional response. However, Schmidt has not identified any new arguments raised by Defendant, and Schmidt's filings are clearly aimed at augmenting the record after he filed his opposition.

The Court has reviewed Schmidt's supplemental filings filed on May 20-22, 2009, and it finds them to be cumulative and of little aid to the Court in evaluating Defendant's dispositive motion. Accordingly, the Court shall deny Schmidt's motion for acceptance of these additional materials and does not consider them in ruling on Defendant's motion to dismiss or, in the alternative, for summary judgment. However, Schmidt's original surreply does appear to clarify his position with respect to many of his claims for relief. Courts may consider supplemental materials filed by *pro se* litigants in order to clarify the precise claims being asserted. *Wada v. U.S. Secret Serv.*, 525 F. Supp. 2d 1, 9 (D.D.C. 2007). Therefore, the Court declines to strike Schmidt's first surreply from the record and shall consider it in the context of adjudicating Defendant's dispositive motion.

B. *Motion to Dismiss for Lack of Subject Matter Jurisdiction*

Defendant contends that this Court lacks subject matter jurisdiction over all of Schmidt's claims relating to the Settlement Agreement because the Agreement is a contract with the government and the Court of Federal Claims has exclusive jurisdiction over contract claims exceeding $10,000. Because the Court cannot reach the merits of claims over which it lacks jurisdiction, the Court must address this argument first. *See Wright v. Foreign Serv. Grievance Bd.*, 503 F. Supp. 2d 163, 177 (D.D.C. 2007).

23

Federal courts may assert jurisdiction over suits against the United States only to the extent that sovereign immunity has been waived. *United States v. Mitchell*, 445 U.S. 535, 538 (1980).[10] Under the Tucker Act, Congress has waived sovereign immunity with respect to "any claim against the United States founded . . . upon any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1). However, such claims must be brought in the Court of Federal Claims. *Id.* The Tucker Act provides that district courts have concurrent jurisdiction over such claims only to the extent they do "not exceed[] $10,000 in amount." *See* 28 U.S.C. § 1346(a)(2). Accordingly, the Court of Federal Claims has exclusive jurisdiction over contract claims for money damages exceeding $10,000 in amount. *See Brown v. United States*, 389 F.3d 1296, 1297 (D.C. Cir. 2004) (per curiam). Settlement agreements with agencies of the United States constitute contracts for purposes of these jurisdictional provisions. *Shaffer v. Veneman*, 325 F.3d 370, 372 (D.C. Cir. 2003); *see also Massie v. United States*, 166 F.3d 1184, 1188 (Fed. Cir. 1999) ("[A]ny agreement can be a contract within the meaning of the Tucker Act, provided that it meets the requirements for a contract with the Government, specifically: mutual intent to contract including an offer and acceptance, consideration, and a Government representative who had actual authority to bind the Government.") (citation omitted). The jurisdictional bar applies to both claims for breach of a settlement agreement and any claims that rely on the existence of a breach. *See Brown*, 389 F.3d at 1297-98 (holding that district court lacked jurisdiction over Title VII claims that depended upon the finding of a breach of settlement agreement). Moreover, the Tucker Act's waiver of sovereign immunity also encompasses tort-like claims such as

---

[10] Schmidt brings this suit against the USAID Administrator in his official capacity. An official-capacity suit against an agency or agent of the United States is the equivalent of a suit against the United States. *Davis v. Mukasey*, 669 F. Supp. 2d 45, 49 (D.D.C. 2009).

misrepresentation where the plaintiff asserts that pre-contract behavior by the government necessitates an adjustment of contract terms, including damages, reformation, or rescission. *See Kline v. Cisneros*, 76 F.3d 1236 (D.C. Cir. 1996) (explaining that the Tucker Act applies to claims that "would not be in court but for the existence of the contract"). Except in narrow circumstances, the Tucker Act does not waive sovereign immunity with respect to suits for equitable relief on a contract, and the Tucker Act represents the only waiver of sovereign immunity on contract claims. *Richardson v. Morris*, 409 U.S. 464, 465 (1973) (per curiam); *Wright*, 503 F. Supp. 2d at 178-81.

Defendant contends that to the extent that Schmidt's claims attack the formation of or compliance with the terms of the Settlement Agreement, they are not within the jurisdiction of this Court because Schmidt seeks damages worth $1.8 million. *See* Def.'s Mem. at 9. The Court agrees, at least with respect to any claims for breach of contract or equitable relief on the contract based on pre-contract behavior by the government. In his First Amended Complaint, Schmidt states a claim for "Breach of Contract" and alleges that USAID did not follow the terms of the Settlement Agreement. *See* First Am. Compl. at 8. Schmidt specifically alleges that USAID violated the Settlement Agreement's confidentiality provision and failed to pay him over $10,000 that was erroneously deducted from his paycheck, a sum that USAID contends was included as part of the settlement. *See id.* at 8-9. Because these claims exceed the jurisdictional threshold for concurrent jurisdiction in federal district court, they must be brought before the Court of Federal Claims. Additionally, it appears that Schmidt may be seeking equitable and monetary relief pertaining to the validity of the Settlement Agreement. *See, e.g.*, Compl. at 8 (stating claim for "Invalid Settlement Agreement due to threats, deception, coercion, duress, and poor health,

etc."); *id.* (stating claim for "Facially retaliatory language in the Settlement Agreement."). To the extent that Schmidt does seek money damages or equitable relief for government conduct that invalidates the Settlement Agreement, his claims are contractual in nature and fall within the ambit of Tucker Act jurisdiction. Because it is apparent that Schmidt seeks in excess of $10,000 in damages from the government's alleged misconduct, this Court lacks jurisdiction over such claims.[11]

However, many of Schmidt's other claims cannot be considered to be founded upon the Settlement Agreement, even if they are somehow related to its negotiation. For example, Schmidt's constructive termination claim appears to be based on allegations that USAID officials used threats and other improper tactics to force him to resign prior to signing the Settlement Agreement. *See* Sec. Am. Compl. at 6-7. Schmidt also asserts claims for "impermissible conduct," misrepresentation, defamation, and Privacy Act violations based on USAID employees' conduct during settlement negotiations in March 2008. *See* Compl. at 8; Sec. Am. Compl. at 8-10. To the extent that Schmidt is seeking damages for personal injuries resulting from this conduct, these are tort or statutory claims that do not depend upon the existence of the Settlement Agreement or a finding that it was breached. Accordingly, they are not contract claims that must be adjudicated in the Court of Federal Claims, and this Court may hear them under other jurisdictional provisions such as the Federal Tort Claims Act.

---

[11] The D.C. Circuit has held that where a plaintiff is alleging a statutory or constitutional violation by a federal agency based on a contract, the federal district courts have jurisdiction to hear the claim under the waiver of sovereign immunity in the Administrative Procedure Act. *See Transohio Sav. Bank v. Director, Office of Thrift Supervision*, 967 F.2d 598, 610-11 (D.C. Cir. 1992). However, the Court does not construe Schmidt's contract claims to be based on violations of the constitution or federal statutes. Accordingly, the Court does not have jurisdiction under the APA to consider Schmidt's contract claims.

The Court shall therefore grant Defendant's motion to dismiss for lack of subject matter jurisdiction with respect to Schmidt's claims for: breach of contract (including breach of confidentiality); invalid Settlement Agreement; "facially retaliatory language in the Settlement Agreement"; misrepresentation of Settlement Agreement terms; and any other claims for relief pertaining to agency misconduct that impinges on the validity of the Settlement Agreement.[12] The Court shall now turn to the merits of each of Schmidt's remaining claims.

C.      *Motion to Dismiss Claims Released by the Settlement Agreement*

Defendant contends that the majority of Schmidt's claims relating to USAID employees' allegedly improper conduct are barred by the terms of the Settlement Agreement. Schmidt does not dispute that the language of the Settlement Agreement includes a release of any claims relating to the issues in his EEO complaint or his employment with USAID. However, Schmidt contends that the release and the entire Settlement Agreement are invalid for a variety of reasons, including coercion, duress, misrepresentation, and lack of a witness's signature on the doctor's affidavit that Schmidt was competent to enter a binding agreement. *See* Pl.'s Opp'n at 10, 14, 17, 29. Although the Court lacks jurisdiction over Schmidt's contract claims, it does have jurisdiction to consider whether the defense of waiver based on the Settlement Agreement is valid. *See Wright*, 503 F. Supp. 2d at 173-77 & n.8 (evaluating the validity of a settlement agreement for the limited purpose of evaluating a waiver defense despite lacking jurisdiction over affirmative contract claims based on the agreement).

---

[12] The Court does not find that it is in the interest of justice to transfer such claims to the Court of Federal Claims as permitted by 28 U.S.C. § 1361. As explained below, the Settlement Agreement bars Schmidt from litigating most of his claims, and Schmidt's acceptance of the benefits from the Settlement Agreement precludes him from attacking its validity.

Settlement agreements are governed by principles of contract law.  *Green v. AFL-CIO*, 657 F. Supp. 2d 161, 165 (D.D.C. 2009).  A party to a voluntary settlement agreement may waive his or her rights to litigate claims in court, including claims under Title VII.  *Id.* at 165-66; *Johnson v. Veneman*, 569 F. Supp. 2d 148, 154-55 (D.D.C. 2008) (holding that waiver of claims under Title VII must be "knowing and voluntary").  "Absent a showing of fraud or duress, parties are bound by the agreements that they sign, without regard to whether they regret their decisions after the fact."  *Johnson v. Penn Camera Exchange*, 583 F. Supp. 2d 81, 86 (D.D.C. 2008); *see also Weaver v. Bratt*, 421 F. Supp. 2d 25, 32 (D.D.C. 2006) ("In the District of Columbia (and as a general rule of contract law), a party's signature on a contract binds the party to the terms of the contract, even if that party is ignorant of the terms of the contract.")  Here, Schmidt has alleged both fraud or misrepresentation and duress on the part of USAID in forcing him to enter into the Settlement Agreement.[13]  "It is well-established that a party induced to enter a settlement agreement because of duress may be entitled to relief."  *Wright*, 503 F. Supp. 2d at 174 (quoting *Am. Sec. Vanlines, Inc. v. Gallagher*, 782 F.2d 1056, 1060 (D.C. Cir. 1986)) (quotation marks omitted).  "If a party's manifestation of assent is induced by an improper threat by the other party

---

[13] The Court construes Schmidt's allegation that Herscowitz told him the Settlement Agreement would be invalid if it he did not obtain a witness's countersignature on Dr. Melmed's affidavit as a claim of misrepresentation as opposed to a claim that Schmidt lacked the capacity to enter into the Agreement.  Although Schmidt does argue that he was not of "sound mind and body during March 2008" due to his extensive prescription drug use, *see* Pl.'s Opp'n at 9, Schmidt does not argue lack of a capacity as a basis for contesting the validity of the Settlement Agreement.  *See* Pl.'s Opp'n at 14 (arguing invalidity "[b]ased upon USAID's bad faith negotiations, repeated threats, coercion, trickery, deception, misrepresentation of [Dr. Melmed's affidavit], lacks a 'meeting of the minds' regarding the meaning of the terms and conditions set forth in the settlement agreement, false promises and statements made by Mr. Herscowitz to the Plaintiff").  However, to the extent that Schmidt may be arguing that his mental illness prevented him from acting reasonably with respect to the transaction, such a mental illness, if proven, could render the contract voidable at his option.  *See* Restatement (Second) of Contracts § 15 (1981).

that leaves the victim no reasonable alternative, the contract is voidable by the victim."

Restatement (Second) of Contracts § 175 (1981) (hereinafter, "Restatement"); *see also* 17A

C.J.S. Contracts § 185 ("[A] contract made under duress is ordinarily voidable and not void, for

the consent is present, although not such a free consent as the law requires.").  Similarly, "a

contract is voidable at the option of the innocent party if that party's assent was induced by a

misrepresentation, whether fraudulent or innocent."  *Weaver*, 421 F. Supp. 2d at 32; Restatement

§ 164 ("If a party's manifestation of assent is induced by either a fraudulent or a material

misrepresentation by the other party upon which the recipient is justified in relying, the contract

is voidable by the recipient.")  A voidable contract is one under which a party may elect to avoid

any legal obligations under the contract.  *United States ex rel. Siewick v. Jamieson Sci. & Eng'g,

Inc.*, 214 F.3d 1372, 1377-78 (D.C. Cir. 2000) (citing Restatement § 7).

    The Court need not wade through Schmidt's allegations of fraud and duress, however,

because assuming *arguendo* that Schmidt can establish fraud or duress, these conditions merely

render the Settlement Agreement voidable.  A party's power to avoid a contract due to fraud or

duress is lost if, after the circumstances that made the contract voidable have ceased to exist, the

party "manifests to the other party his intention to affirm it or acts with respect to anything that

he has received in a manner inconsistent with disaffirmance."  Restatement § 380; *see id.* cmt. *a*

("A party who has the power of avoidance may lose it by action that manifests a willingness to go

on with the contract.  Such action is known as 'affirmance' and has the effect of ratifying the

contract.")  "[I]t is . . . well-established that a victim of duress may be held to have ratified the

agreement by accepting its benefits."  *Wright*, 503 F. Supp. 2d at 174-75 (citation and quotation

marks omitted); *see also Goldstein v. S & A Restaurant Corp.*, 622 F. Supp. 139, 145 (D.D.C.

1985) ("[T]he acceptance of benefits under the contract necessarily bars denial of its validity.");

*Jacobson v. Jacobson*, 277 A.2d 280, 283 (D.C. 1971) ("Ratification results if the party who

executed the contract under duress accepts the benefits flowing from it or remains silent or

acquiesces in the contract for any considerable length of time after opportunity is afforded to

annul or void it.") (quotation marks omitted). "In other words, because economic duress merely

renders a contract voidable–as opposed to void–a plaintiff who accepts the benefits of the

contract entered into under economic duress cannot later seek to have the contract rescinded."[14]

*Wright*, 503 F. Supp. 2d at 175. The same is true for contracts rendered voidable by

misrepresentation. *See* Restatement § 380(2). This outcome is also supported by principles of

equitable estoppel. *See Bennett v. U.S. Chess Fed'n*, 468 F. Supp. 2d 79, 85 (D.D.C. 2006);

*Asberry v. U.S. Postal Serv.*, 692 F.2d 1378, 1382 (Fed. Cir. 1982) ("Having voluntarily accepted

the settlement and its benefits, [the plaintiff] is equitably estopped to attack it.")

 It is undisputed that Schmidt has accepted a $140,000 payment from USAID as part of

the Settlement Agreement and has not been required to reimburse the agency for any leave

accrual. Although Schmidt did argue in his post-settlement administrative complaints that the

Agreement was invalid, the record shows that Schmidt has sought to keep the benefits of the

Agreement without also accepting its obligations. *See* Letter from Schmidt to Carlton Hadden,

Director, EEOC Office of Federal Operations (Sept. 22, 2008) at 43 (requesting that EEOC

"reinstate my original EEO case 'without' a tender back requirement"). Accordingly, Schmidt is

precluded from attacking the validity of the Settlement Agreement and the release of claims

---

 [14] Economic duress is distinguishable from duress by physical compulsion, whereby a party's manifestation of assent to a contract is from conduct that is physically compelled by duress. In such circumstances, the contract is void rather than voidable. *See* Restatement § 174.

contained therein.  Moreover, Schmidt admits in his Complaint that he consulted an attorney about the Settlement Agreement, and he does not claim that he was unaware of the release or the consequences of entering into the Settlement Agreement.[15]  Therefore, the Court finds that Schmidt knowingly released his claims against USAID in the Settlement Agreement and is barred from litigating them in this Court.  The release covers all claims "arising from or related to his employment with USAID" and therefore includes: his claim for constructive termination; his pre-settlement discrimination and retaliation claims, including his claim under the ADA; his claim that the agency never informed him of his rights under the FMLA; his claim that the agency violated OSHA; his claim that the agency violated the No-FEAR Act; his claim that USAID violated the Privacy Act by disclosing his medical information; his claims for negligence and gross negligence based on the agency's mishandling of his sick leave, retirement benefits, and other personnel accounts; his claim for "impermissible conduct," and all other claims pertaining to agency misconduct leading up to the execution of the Settlement Agreement. Accordingly, Schmidt has failed to state a claim upon which relief can be granted, and the Court shall grant Defendant's motion to dismiss these claims under Rule 12(b)(6).[16]

---

[15] Indeed, Schmidt's misrepresentation claim is not based on any misrepresentations about the material terms of the Agreement, such as the release.  Rather, it is based on Mr. Herscowitz's statements about the legal significance of his doctor's affidavit.  It is also clear from Schmidt's duress allegations that he was aware of the consequences of settling his claims.

[16] In addition to the facts alleged in the Complaint and the documents attached as exhibits to the Complaint, the Court has only considered two documents attached in support of Defendant's dispositive motion.  The first is the Settlement Agreement itself, and the second is the affidavit of Dr. Melmed.  Because Schmidt does not dispute the accuracy of these documents and they are incorporated by the allegations in his Complaint, the Court may consider them without treating Defendant's motion to dismiss as one for summary judgment.  *See EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997) (holding that courts may consider "the facts alleged in the complaint, any documents either attached to or incorporated in

However, Schmidt does have claims based on post-settlement agency conduct that occurred after Schmidt resigned and which are not based on the Schmidt's prior claims of discrimination.  As such, these claims are not barred by the terms of the release.  Schmidt's remaining claims are: (1) that USAID violated FECA by failing to process his requests related to workers' compensation benefits; (2) that USAID violated Title VII and possibly other federal laws by interfering with an EEO investigation in which Schmidt was a witness and intimidating him; (3) that USAID defamed Schmidt by disclosing his sworn testimony in that EEO investigation to persons without a "need to know"; and (4) that USAID failed to respond to his May 2008 and September 2008 FOIA requests.[17]  The Court shall now evaluate each of these claims.

   D.  *Schmidt's Workers' Compensation Claims*[18]

Schmidt claims that USAID failed to respond to his requests that the agency provide certain paperwork to the Department of Labor for processing his workers' compensation claim.  To the extent that Schmidt's claim relies on agency actions that occurred prior to March 26, 2008, his claim is barred by the release in the Settlement Agreement.[19]  However, to the extent

---

the complaint and matters of which [they] may take judicial notice.")

[17] The Court has afforded the operative complaint a liberal construction, and the Court finds that these are the only four remaining claims that are not barred by the Settlement Agreement.

[18] The Court shall GRANT Schmidt's [17] Motion Requesting Removal of Specific Workers' Compensation Items from Plaintiff's Civil Complaint as unopposed.  In the motion, Schmidt moves to strike a portion of his damages related to his workers' compensation claim.

[19] For example, Schmidt alleges in his First Amended Complaint that USAID has been in violation of FECA since on or about November 2006.  *See* First Am. Compl. at 2.

that the agency acted after the Settlement Agreement, it appears that Schmidt is trying to assert a claim against USAID for violation of FECA regulations. Schmidt does not identify the regulations or statutory provisions he believes to have been violated, but FECA regulations do require government employers to fill out certain forms submitted by employees and forward them to OWCP. *See, e.g.*, 20 C.F.R. § 10.111. Schmidt's complaint can be reasonably construed to assert a violation of these regulations.

However, FECA does not provide a cause of action against a government employer who fails to comply with these regulations. Schmidt might be able to assert a claim under the Administrative Procedure Act, which permits federal courts to "compel agency action unlawfully withheld or unreasonably delayed" and "hold unlawful and set aside agency action . . . found to be . . . not in accordance with law." *See* 5 U.S.C. § 706. But the APA does not waive sovereign immunity for claims for money damages, *see* 5 U.S.C. § 702, and the Court does not construe Schmidt's complaint as seeking injunctive relief pertaining to this claim.[20] Accordingly, the Court must dismiss Schmidt's claim that USAID violated FECA regulations for lack of subject matter jurisdiction.

Defendant construes Schmidt's complaint as asserting a substantive claim for workers' compensation benefits under FECA. The Settlement Agreement could not bar such a claim because the right to receive workers' compensation benefits cannot be waived. *See* 20 C.F.R. § 10.15 ("No employer or other person may require an employee or other claimant to enter into

---

[20] Schmidt does not specifically request injunctive relief in his Complaint or identify specific agency actions he would seek to compel. Rather, Schmidt contends that the agency's failure to follow FECA regulations has caused him "pain and suffering." *See* Sec. Am. Compl. at 2.

any agreement, either before or after an injury or death, to waive his or her right to claim compensation under the FECA.") However, all decisions regarding an employee's entitlement to FECA benefits are made by the Department of Labor and may not be reviewed in federal court. *See Mason v. District of Columbia*, 395 A.2d 399, 402 (D.C. 1978); 5 U.S.C. § 8128(b) ("The action of the Secretary or his designee in allowing or denying a payment under [FECA] is . . . not subject to review by another official of the United States or by a court by mandamus or otherwise.") Accordingly, the Court must dismiss any workers' compensation claim for lack of subject matter jurisdiction.

### E.    *Schmidt's Involvement as a Witness in an EEO Investigation*

Schmidt claims that USAID violated Title VII and possibly other federal laws by intimidating Schmidt after he submitted information to an EEO investigator in a case related to one of Schmidt's former subordinates. The only basis for these claims that is pled in the Complaint is a letter received by Schmidt on September 9, 2008, from James M. Peters, Assistant General Counsel at USAID. The letter is a response to Schmidt's request for reimbursement of $24 in expenses incurred when he sent documents to the investigator via Federal Express. *See* Def.'s Mot., Ex. 12. The letter also explained that the investigator informed EOP that Schmidt had provided supplemental affidavits and additional documentation beyond the scope of the investigator's inquiry. *See id.* Therefore, the agency requested that Schmidt refrain from submitting future unsolicited statements and/or documentation relating to the EEO investigation. *Id.*

Based on this letter, Schmidt has asserted claims for "witness intimidation and tampering," "interfering with an official EEO investigation," and violations of Title VII. The

only plausible claim the Court can discern from these allegations is a claim under Title VII for unlawful retaliation for engaging in protected activity. Title VII makes it unlawful "for an employer to discriminate against any of his employees . . . because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e-3(a). "The antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006). "[A] plaintiff must show that a reasonable employee would have found the challenged action materially adverse." *Id.* at 68. Schmidt's claim fails this test for two reasons. First, Schmidt was no longer employed by USAID when he submitted the materials to the EEO investigator and therefore does not qualify as an "employee" under Title VII. *See* 42 U.S.C. § 2000e(f) (defining "employee"). Second, no reasonable employee would have been dissuaded from testifying based on the language of the letter, which was not threatening in tone. Moreover, in light of the fact that the investigator received Schmidt's testimony, Schmidt has failed to explain how USAID's actions interfered in any way with the investigation. Thus, Schmidt has failed to state a claim for relief under Title VII, and the Court shall grant Defendant's motion to dismiss any claims relating to Schmidt's participation as a witness in his former subordinate's EEO investigation.[21]

   F.   *Schmidt's FOIA Claim*

   Schmidt's final claim is that the Agency has failed to respond to FOIA requests he submitted in May 2008 and September 2008. Defendant moves to dismiss this claim on the

---

[21] Because the September 9, 2008, letter is explicitly referenced in the Complaint, *see* Compl. at 6, the Court may consider it without treating Defendant's motion as one for summary judgment.

ground that Schmidt has failed to plead sufficient information to state a claim for relief under

FOIA. While Schmidt's allegations regarding this claim are sparse, the Court finds they are

sufficient to state a claim. *See* First Am. Compl. at 13-14. However, these allegations are

identical to those raised in the related FOIA action pending before this Court. Because the

parties have addressed these issues more fully in the related case, the Court shall dismiss

Schmidt's FOIA claim from this action without prejudice and adjudicate Schmidt's FOIA claim

in the related action.

## IV. CONCLUSION

The Court finds that it lacks jurisdiction over Schmidt's claims pertaining to the validity

of the Settlement Agreement, breach of the Settlement Agreement, and alleged violations of the

Federal Employees' Compensation Act. The Court also finds that the majority of Schmidt's

claims relating to agency misconduct are barred by the Settlement Agreement. The Court finds

that with respect to Schmidt's claims pertaining to witness intimidation, Schmidt has failed to

state a claim upon which relief can be granted. The Court also finds that Schmidt's FOIA claim

is duplicative of the claims asserted in the related action pending before this Court, *Schmidt v.

Fore*, Civil Action No. 08-2185 (D.D.C. filed Dec. 16, 2008).

For the foregoing reasons, the Court shall GRANT Schmidt's [17] Motion Requesting

Removal of Specific Workers' Compensation Items from Plaintiff's Civil Complaint, DENY

Schmidt's [22] Motion for Acceptance of Plaintiff's Supplemental Filings, and GRANT

Defendant's [12] Motion to Dismiss. The Court shall dismiss Schmidt's contract claims based

on the Settlement Agreement and Schmidt's workers' compensation claims for lack of subject

matter jurisdiction; dismiss Schmidt's FOIA claim without prejudice; and dismiss the remainder

of Schmidt's claims under Rule 12(b)(6).  An appropriate Order accompanies this Memorandum

Opinion.


Date:   March 17, 2010

                              _____/s/_____
                              COLLEEN KOLLAR-KOTELLY
                              United States District Judge